**IN THE COUNTY COURT OF THE SIXTH JUDICIAL CIRCUIT**
**IN AND FOR PINELLAS COUNTY, FLORIDA**
**SMALL CLAIMS DIVISION**

**LEANDRA OWENS,**

      *Plaintiff,*

  v.

**LVNV FUNDING, LLC,**

      *Defendant.*

Case No.: _____

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, LEANDRA OWENS ("Ms. Owens"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, LVNV FUNDING, LLC ("LVNV"), stating as follows:

## PRELIMINARY STATEMENT

1.     This is an action for damages which do not exceed $8,000, exclusive of attorneys' and costs, brought by Ms. Owens against LVNV for violations of Florida's *Civil Remedies for Criminal Practices Act*, § 772.101, Fla. Stat., *et seq.* ("CRCPA"), the *Florida Consumer Collection Practices Act*, § 559.55, Fla. Stat., *et seq.* ("FCCPA"), and the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("FDCPA").

## JURISDICTION AND VENUE

2.     Jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the CRCPA, § 772.104, Fla. Stat., the FCCPA, § 559.77(1), Fla. Stat., and § 34.01, Fla. Stat.

3.     LVNV is subject to the provisions of the FDCPA, the FCCPA, and the CRCPA, and to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat.

4.      Venue is proper in Pinellas County, Florida, because the acts complained of were committed and / or caused by the Defendant therein.

## PARTIES

### Ms. Owens

5.      Ms. Owens is a natural person residing in the city of Clearwater, Pinellas County, Florida.

6.      Ms. Owens is a *Consumer* as defined by the FDCPA, 15 U.S.C. § 1692a(3) and the FCCPA, § 559.55(8), Fla. Stat.

### LVNV

7.      LVNV is a Delaware limited liability company with a principal address of 355 S Main St., Suite 300-D, Greenville, SC 29601.

8.      LVNV is registered to conduct business in the State of Florida, where its registered agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

### LVNV is a Debt Collector

9.      LVNV is a *Debt Collector* within the meaning of the FDCPA, 15 U.S.C. §1692a(6), and the FCCPA, § 559.55(7), Fla. Stat., in that it uses an instrumentality of commerce, including the postal mail and / or telephone, interstate and within the State of Florida, for its business, the principal purpose of which is the collection of debts, and / or it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

10.      Additionally, LVNV is registered with the Florida Office of Financial Regulation as a Consumer Collection Agency, holding license number CCA9902540.

## FACTUAL ALLEGATIONS

### Continental Makes Illegal Loan to Ms. Owens

11.     On or around April 6, 2023, Ms. Owens received a Verve® Mastercard credit card account with a $500 credit limit (the "Account"), from Continental Finance Company, LLC ("Continental").

12.     Continental charged an interest rate of at least 29.99% annually on Ms. Owens' Account.

13.     In addition to the 29.99% interest, the Account is assessed a $125 "annual membership" fee and a $10 per month ($120 a year) "monthly maintenance fee," for a combined $245 of fees per year for access to the $500 line of credit.

14.     Per § 687.03, Fla. Stat., interest is computed including fees for "any contract, contrivance, or device whatever whereby the debtor is required or obligated to pay a sum of money greater than the actual principal received."

15.     Therefore, the $245 in fees that Ms. Owens was required to pay to receive the $500 line of credit is considered interest under Florida law.

16.     The $245 fee reduced the principal sum received to a maximum of $255.

17.     When adding the additional 29.99% annual rate assessed by Continental, the combined *effective* APR is over 45% on the Account.

18.     § 687.02(1), Fla. Stat., renders loans usurious which are made at interest rates greater than 18% per year.

19.     § 687.071(3), Fla. Stat., renders extensions of credit made with an annual interest rate greater than 45% a third-degree felony.

20.     § 687.071(7), Fla. Stat. indicates any such extension of credit, and logically any debt stemming from such extension of credit, is void and unenforceable.

21.     Long-standing public policy in Florida confirms the impossibility of the alleged debt. *Richter Jewelry Co. v. Schweinert*, 169 So. 750, 758-59 (Fla. 1935) (criminally usurious loans are "void as against the public policy of the state as established by its Legislature.")

22.     Any person who willfully makes a criminally usurious loan, in addition to subjecting themselves to criminal sanctions, forfeits the right to collect payment for the loan. *Id.*

23.     Indeed, even the recovery of the principal balance made at usurious rates is impermissible under Florida law. *Rollins v. Odom*, 519 So. 2d 652, 656 (Fla. Dist. Ct. App. 1988).

24.     The purpose of the usury statutes is to protect the needy borrower by penalizing the unconscionable money lender. *Stubblefield v. Dunlap*, 148 Fla. 401, 4 So.2d 519 (1941); *see also Pushee v. Johnson*, 123 Fla. 305, 166 So. 847 (1936); *River Hills, Inc. v. Edwards*, 190 So.2d 415 (Fla. 2d DCA 1966).

25.     Florida has taken usury one step further in the consumer loan context through the passing of the Consumer Finance Act, § 516, Fla. Stat. (the "Act").

26.     The Act requires licensure and state oversight for lenders issuing loans to Florida consumers in the amount of $25,000 or less. § 516.02(1), Fla. Stat.

27.     The Act further restricts the interest and fees which may be charged by a licensed consumer finance company.

28.     § 516.02(c), Fla. Stat., indicates that any loan which fails to comply with the Act is unenforceable in Florida *even if valid wherever made.*

29.     Thus, Florida has made clear that in order to enforce a consumer loan against a Florida resident, a lender must be licensed in Florida and comply with the Consumer Finance Act.

30.     Ms. Owens' Account charged an effective annual interest rate exceeding 45%, more than the rate permitted by the Act.

31.     Continental is not licensed as a Consumer Finance Company in Florida.

32.     The Account and any balance owed, is thus unenforceable against Ms. Owens.

33.     The Account made to Ms. Owens by Continental included an annual percentage rate that vastly exceeded the maximum lawful interest rate in Florida.

34.     The making, and collection, of the Account constitutes a felony pursuant to § 687.071(3), Fla. Stat.

35.     Because the Account was subject to an effective annual interest rate which vastly exceeded the 45% limit as proscribed in § 687.071(3), Fla. Stat., the Account was void *ab initio* and unenforceable in Florida, pursuant to § 687.071(7), Fla. Stat.

36.     Any amount repaid on an illegal, usurious debt deemed *void ab initio* by state law constitutes unjust enrichment, even if less than the original amount of the loan. *See, e.g., Williams et al. vs. Big Picture Loans, LLC*, case 3:17-cv-461, E.D. Virginia, July 20, 2021.

37.     Further, the Account is an *unlawful debt* pursuant to § 772.102(2)(a)(3), Fla. Stat.

38.     Ms. Owens used the proceeds from the Account for personal, family, or household purchases.

39.     The Account therefore meets the definition of *Debt* within the FDCPA, 15 U.S.C. § 1692a(5) and the FCCPA, § 559.55(6), Fla. Stat.

### Continental's Rent-a-Bank Scheme with Celtic Bank

40.     In determining whether an agreement is usurious, the court may disregard the form of the agreement and consider the substance of the transaction. *See Antonelli v. Neumann*, 537 So. 2d 1027, 1029 (Fla. Dist. Ct. App. 1988). *Growth Leasing, Ltd. v. Gulfview Advertiser, Inc.,*448

So.2d 1224 (Fla. 2d DCA 1984); *May v. U.S. Leasing Corp.*, 239 So.2d 73 (Fla. 4th DCA 1970);

*Kay v. Amendola*, 129 So.2d 170 (Fla. 2d DCA 1961).

41.     In an attempt to circumvent state usury laws, such as Florida's, Continental "partners" with various banks willing to engage in rent-a-bank schemes, including TBOM and Celtic Bank.

42.     TBOM does little consumer lending of its own and issues no credit card accounts of its own, without a purported "partner" like Continental.

43.     As a bank, TBOM can export the maximum interest rates of its home state of Missouri to other states and thus bypass Florida's restrictions on usury, pursuant to the National Bank Act, 12 U.S.C. §85.

44.     However, TBOM was not the true entity extending credit to Ms. Owens.

45.     TBOM has a history of using its Missouri bank charter to "partner" with non-bank entities.

46.     TBOM had virtually nothing to do with the application process, underwriting, marketing, servicing, or collection of Ms. Owens' Account.

47.     Moreover, at no point was any of TBOM's own capital at risk if she defaulted.

48.     The "rent-a-bank" agreements – which Continental euphemistically refers to as "Program Agreements" with its bank partners like TBOM – allow Continental Finance to market subprime cards like Verve®; Continental bears all of the costs of said marketing and advertising.

49.     Continental also agreed in advance with TBOM that Continental would provide the analytics, software, and underwriting models to underwrite the loans resulting from its marketing efforts, and that Continental would perform the underwriting for the credit card accounts resulting from its marketing efforts.

50.     Continental developed its own credit models for underwriting, based on data concerning prior Continental customers. As part of Continental's underwriting, it considered the risk of customers missing payments, the likelihood that a borrower would use a Continental credit card for a cash advance instead of a purchase, the borrower's history with other Continental credit cards, and other factors.

51.     Continental underwrote the Verve® Mastercard application Plaintiff submitted.

52.     To the extent Continental claims that TBOM itself approved the account, even if based on Continental's recommendations, this, too, is but a hair-thin veneer.

53.     TBOM utilizes software provided by Continental and which incorporates metrics programmed by Continental to "approve" applications; such approvals are strictly pro forma and do not deviate from the recommendation of Continental.

54.     Continental, through Continental Purchasing, LLC and other subsidiaries and related entities, purchases the credit card receivables from TBOM within days of their origination, and then collects 29.99% interest from cardholders on those receivables.

55.     Once purchased from TBOM, the receivables are securitized and sold to investors; for example, $210 million of Continental receivables were used to back corporate bonds which were sold to investors through Continental Finance Credit Card ABS Master Trust, Series 2022-A ("CFCCMT 2022-A") in four tranches; the lowest two of the trances carried ratings below BBB, meaning the bonds are considered "junk rated" and thus require Continental to pay higher-than-normal interest rates to investors, as high as 12.42%.

56.     CFCCMT 2022-A was comprised of receivables from more than 1,000,000 different credit card accounts, with an average balance of $648 and average interest rate of 27.9%.[1]

---

[1] See https://asreport.americanbanker.com/news/general-purpose-non-prime-card-accounts-to-secure-continental-finance-deal

57.     On information and belief, some of Plaintiff's purported debt concerning her Verve® Mastercard was included in CFCCMT 2022-A.

58.     Continental hired a ratings agency, Kroll Bond Rating Agency, to rate its Class A through D bonds; one of the reasons Kroll stated for the ratings it assigned to the bonds, including the "junk" ratings assigned to two of the four tranches, was the risk that a court could find Continental to be the true lender of the receivables, rendering most, if not all, of the receivables uncollectable.

59.     Continental arranged with TBOM, in advance of originating the Verve® Mastercard Account, that Continental would advertise and market for the credit accounts, that it would handle all of the work necessary to originate the credit accounts, would service the credit accounts after origination, and that it would be entitled to collect and receive all payments made on the credit accounts, despite the fact that the credit accounts were issued by Continental's third-party bank partner.

60.     Continental managed all business operations relating to the submission of a credit application by Plaintiff and the extension of credit to Plaintiff, in exchange for fees.

61.     Continental charged amounts to Plaintiff for obtaining her extension of credit, and Continental charged and collected fees and interest from Plaintiff.

62.     Continental Finance, not TBOM, collected and received all fees associated with the Verve® Account – including monthly program fees and annual fees.

63.     Continental Finance serviced and administered the Verve® Mastercard account, including issuing statements, payment processing, collections customers service, refunds and adjustments, customer disputes, and other services.

64.     Continental Finance authored a smart phone app which consumers can use to make payments and manage their Verve Mastercard account and *apply for credit line increases*; the app can be downloaded for Android phones from Google Play, and the owner/developer of the app is listed as "Continental Finance Company" by Google.[2]

65.     Plaintiff's Verve® Mastercard statements direct her to make payments to Continental Finance, not TBOM.

66.     At its crux, the only interaction Plaintiff had with TBOM in connection with her Verve® Mastercard Account was TBOM's name appearing in the "Frequently Asked Questions" section at the bottom of the Verve® Mastercard website, vervecardinfo.com; TBOM's name also appears in 6-point type at the very bottom of the Verve® Mastercard application.

67.     Even the answer to the FAQ sidesteps any implication that TBOM is somehow the true lender of the account; the one-paragraph response to the FAQ simply explains who TBOM is and in no way details any relationship to the Verve® Mastercard. **SEE PLAINTIFF'S EXHIBIT A.**

68.     Continental Finance and its related non-bank entities maintain collateral accounts at TBOM.

69.     Money in the accounts is used to fund consumer purchases on the Verve Mastercard accounts.

70.     TBOM then assigns the receivables to Continental Finance and its related non-bank entities quickly, usually within 24 hours of origination.

71.     Continental Finance and its related non-bank entities and investors are the ones assessing the interest and fees and receiving these payments from consumers including Ms. Owens.

---

[2] https://play.google.com/store/apps/details?id=com.contfinco.andriodapp&hl=en_US, accessed September 5, 2024.

72.     Thus, while TBOM may retainer ownership of the *account*, it does not maintain ownership of the receivables to the account.

73.     At best, TBOM keeps the worthless shell, while selling the nut inside.

74.     Continental Finance and its related non-bank entities then replenish the funds withdrawn from the collateral accounts daily.

75.     Covenants with TBOM stipulate that Continental Finance and its related non-bank entities cannot originate more in purchases than it has in its collateral accounts.

76.     TBOM collects nothing but a series of small, but guaranteed fees for its help – such as a fee for each account opened, each account which remains open monthly, a percentage of interchange revenue paid by the Mastercard payment network, and so forth – the "rent."

77.     This arrangement makes Continental the true lender.

78.     Continental's entire business model is founded on making a profit by-- purportedly -- providing advice and assistance to consumers like Plaintiff, helping her obtain credit ostensibly from TBOM, a third-party financial institution, so that Continental would receive, in reciprocation, the legal right to receive payments from Plaintiff.

79.     The Verve® Mastercard is a registered trademark of Continental. **SEE PLAINTIFF'S EXHIBIT B.**

80.     Continental acted as a loan broker when it advertised and solicited Plaintiff to open a Verve® Mastercard account, utilizing a rent-a-bank scheme to originate credit card accounts issued in the name of a Missouri-chartered bank (as well as other similar accounts in the name of Celtic Bank).

81.     Continental is not a bank, but rather an unlicensed, illegal loan broker reaping unlawful fees from consumers across the nation.

82.    Continental marketed credit card loans to Plaintiff, and encouraged and assisted her to obtain the credit card loans Continental marketed.

83.    Continental, in return for the payment of money or other valuable consideration by Plaintiff, represented that it could and would obtain an extension of credit for Plaintiff -- the Verve® Mastercard Account-- and did so.

### Defendant Attempts to Collect Illegal Debt from Ms. Owens

84.    By April 2024, Continental alleged that Ms. Owens owed $697 – a large portion of which was interest and other fees.

85.    Around April 2024, Continental, or a successor in interest, sold or otherwise assigned the balance of the Account to LVNV.

86.    LVNV knew, or should have known, that it was collecting an unlawful debt from Ms. Owens.

87.    LVNV is a large debt buyer with a number of experienced lawyers advising it on consumer protection statutes; beyond this, LVNV has been sued multiple times for collecting unlawful debts from consumers.

88.    Beyond this, LVNV was in possession of the original account documents creating the Account.

89.    The interest rate was printed in large, bold type on the account disclosure.

90.    LVNV then took steps to collect the Account from Ms. Owens, including collection letters and calls, and reporting the Account as a legally owed, legitimate debt to CRAs like Experian Information Solutions, Inc. ("Experian"). **SEE PLAINTIFF'S EXHIBIT C.**

91.    Reporting a debt to a CRA is an attempt to collect the debt alleged therein. *See, e.g.*, *Edeh v. Midland Credit Management, Inc.*, 748 F. Supp. 2d 1030 (D. Minn. 2010) ("The

Court has learned, through its work on countless FDCPA cases, that threatening to report and reporting debts to CRAs is one of the most commonly-used arrows in the debt collector's quiver.")

92.     LVNV's report regarding the Account to Experian unfairly impacted Ms. Owens' credit scores, credit report, debt-to-income ratios, and similar.

93.     Ms. Owens suffered severe emotional distress in being subjected to illegal collection actions by LVNV concerning an extension of credit that she does not legally own.

94.     The above-described collection conduct by LVNV in its efforts to collect this alleged debt from Ms. Owens was oppressive, deceptive, misleading, unfair and illegal communications in an attempt to collect this alleged debt, all done in violation of numerous and multiple provisions of the FDCPA and the FCCPA.

95.     These violations by LVNV were knowing, willful, negligent and/or intentional, and LVNV did not maintain procedures reasonably adapted to avoid any such violations.

96.     Ms. Owens has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.


## COUNT I
### LVNV'S VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e

97.     Ms. Owens adopts and incorporates paragraphs 1 – 87 as if fully stated herein.

98.     LVNV violated 15 U.S.C. § 1692e when it used misleading and deceptive means to attempt to collect a debt from Ms. Owens, by: (1) attempting to collect an unenforceable debt through letters and phone calls; and, (2) reporting the Account to a CRA as a legally owed obligation, claiming a debt from an unlicensed, non-bank entity, Continental, bearing an *effective* interest rate more than 25%, was a legal, valid, and enforceable debt, when the extension of credit was null, void, and unenforceable under Florida law.

99.     LVNV's conduct renders it liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Ms. Owens respectfully requests that this Honorable Court enter judgment against LVNV for:

a.      Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.      Actual damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.      Such other relief that this Court deems just and proper.

## COUNT II
### LVNV'S VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(10)

100.    Ms. Owens adopts and incorporates paragraphs 1 – 87 as if fully stated herein.

101.    LVNV violated 15 U.S.C. § 1692e(10) when it used misleading and deceptive means to attempt to collect a debt from Ms. Owens, by: (1) attempting to collect an unenforceable debt through letters and phone calls; and, (2) reporting the Account to a CRA as a legally owed obligation, claiming a debt from an unlicensed, non-bank entity, Continental, bearing an *effective* interest rate more than 25%, was a legal, valid, and enforceable debt, when the extension of credit was null, void, and unenforceable under Florida law.

102.    LVNV's conduct renders it liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Ms. Owens respectfully requests that this Honorable Court enter judgment against LVNV for:

a.      Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.      Actual damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.      Such other relief that this Court deems just and proper.

## COUNT III

**LVNV'S VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(2)(a)**

103.    Ms. Owens adopts and incorporates paragraphs 1 – 87 as if fully stated herein.

104.    LVNV violated 15 U.S.C. § 1692e(2)(a) when it made a false representation about

the character, amount and/or legal status of a debt by: (1) attempting to collect an unenforceable

debt through letters and phone calls; and, (2) reporting the Account to a CRA as a legally owed

obligation, claiming a debt from an unlicensed, non-bank entity, Continental, bearing an *effective*

interest rate more than 25%, was a legal, valid, and enforceable debt, when the extension of credit

was null, void, and unenforceable under Florida law.

105.    LVNV's conduct renders it liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Ms. Owens respectfully requests that this Honorable Court enter

judgment against LVNV for:

a.      Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.      Actual damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.      Such other relief that this Court deems just and proper.

**COUNT IV**
**LVNV'S VIOLATIONS OF THE FDCPA, 15 U.S.C. § 1692e(8)**

106.    Ms. Owens adopts and incorporates paragraphs 1 – 87 as if fully stated herein.

107.    LVNV violated 15 U.S.C. § 1692e(8) when it communicated to a CRA credit

information which is known or which should be known to be false, by reporting the Account to

Experian as a legally owed obligation, claiming a debt from an unlicensed, non-bank entity,

Continental, bearing an *effective* interest rate more than 25%, was a legal, valid, and enforceable

debt, when the extension of credit was null, void, and unenforceable under Florida law.

108.    LVNV's conduct renders it liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Ms. Owens respectfully requests that this Honorable Court enter judgment against LVNV for:

a.   Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.   Actual damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.   Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.   Such other relief that this Court deems just and proper.

## COUNT V
### LVNV'S VIOLATIONS OF THE CRCPA, § 772.103(3), FLA. STAT.

109.   Ms. Owens adopts and incorporates paragraphs 1 – 87 as if fully stated herein.

110.   The Defendant violated § 772.103(3), Fla. Stat., when it participated in an association with Continental, and each other, through the collection of an unlawful debt – the Account.

111.   LVNV took action in furtherance of this conspiracy, including mailing and e-mailing collection letters.

112.   The Defendant has attempted to collect virtually identical debts through credit reporting, phone calls, demand letters, and threats of litigation from hundreds, if not thousands, of other Florida residents.

**WHEREFORE,** Ms. Owens respectfully requests this Honorable Court enter judgment against the Defendant, ordering:

a.   Threefold the amount of actual damages or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to § 772.104(1), Fla. Stat;

b.   Reasonable costs and attorneys' fees pursuant to § 772.104(1), Fla. Stat.;

c.   An injunction of Estoppel against the Defendant from engaging in any further action in violation of Florida law, pursuant to § 772.14, Fla. Stat.; and,

d.      Any other relief this Court deems equitable and proper under the circumstances.

## COUNT VI
## LVNV'S VIOLATIONS OF THE CRCPA, § 772.103(4), FLA. STAT.

113.    Ms. Owens adopts and incorporates Paragraphs 1 - 87 as if fully restated herein.

114.    LVNV violated § 772.103(4), Fla. Stat. when it conspired with Continental, the other unknown successor-in-interest to the Account, and other persons, natural and otherwise, to collect an unlawful debt – Ms. Owens' Surge® Mastercard account.

115.    LVNV took action in furtherance of this conspiracy, including reporting the account to CRAs, sending collection letters, and making payment demands over the phone.

**WHEREFORE,** Ms. Owens respectfully requests this Honorable Court enter judgment against LVNV, ordering:

a.      Threefold the amount of actual damages or, in the alternate, the statutory minimum of $200, whichever is greater, pursuant to § 772.104(1), Fla. Stat.;

b.      Reasonable costs and attorneys' fees pursuant to § 772.104(1), Fla. Stat.;

c.      An injunction of Estoppel against the Defendant from engaging in any further action in violation of Florida law, pursuant to § 772.14, Fla. Stat.; and,

d.      Any other relief this Court deems equitable and proper under the circumstances.

## COUNT VII
## LVNV'S VIOLATIONS OF THE FCCPA, § 559.72(9), FLA. STAT.

116.    Ms. Owens adopts and incorporates Paragraphs 1 – 87 as if fully restated herein.

117.    LVNV violated § 559.72(9), Fla. Stat. when it attempted to collect the balance of the Account from Ms. Owens. The Account was an illegal and unenforceable debt due to its

unlawful interest rate, in violation of § 687.071, Fla. Stat., and LVNV knew, or should have known, the Account was unenforceable in Florida.

118.    LVNV violated § 559.72(9), Fla. Stat. when it asserted rights which do not exist, specifically, the right to collect the balance of the Account from Ms. Owens, when the extension of credit was not legally owed pursuant to Florida law.

119.    LVNV was in possession of the original loan documents and thus knew, or should have known, that the account contained an illegal interest rate in Florida.

**WHEREFORE,** Ms. Owens respectfully requests this Honorable Court enter judgment against LVNV, for:

a.    Statutory damages of **$1,000.00** pursuant to § 559.77(2), Fla. Stat.;

b.    Actual damages pursuant to § 559.77(2), Fla. Stat.;

c.    Injunctive relief preventing LVNV from attempting to collect the alleged debt from Ms. Owens pursuant to § 559.77(2), Fla. Stat.;

d.    Reasonable costs and attorney's fees pursuant to § 559.77(2), Fla. Stat.; and,

e.    Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Owens hereby demands a trial by jury on all issues so triable.

Respectfully submitted on September 6, 2024,by:

SERAPH LEGAL, P. A.

/s/ *Fethullah Gulen*
Fethullah Gulen, Esq.
Florida Bar Number: 1045392
FGulen@seraphlegal.com
2124 W Kennedy Blvd., Suite A
Tampa, FL 33606

Tel: 813-567-1230
Fax: 855-500-0705
*Counsel for Plaintiff,*
*Leandra Owens*

## ATTACHED EXHIBIT LIST

A     Verve® FAQs from www.vervecardinfo.com, Accessed on August 13, 2024 - Excerpt

B     Verve® Trademark

C     Ms. Owens' Experian Consumer Disclosure, August 12, 2024, LVNV Tradeline - Excerpt

# PLAINTIFF'S EXHIBIT A
## Verve® FAQs from www.vervecardinfo.com
## Accessed on August 12, 2024 – Excerpt

**Online Account Management**

Login to our Online Account Management system to view statements, make payments, check due

account anytime from any mobile device.





**Credit Protection**

Learn more about the Credit Protection program available to all Verve Credit Card holders.

Learn More



**Cardholder Agreement**

Locate and then Review the details of your Verve Mastercard cardholder agreement.

Learn More

various credit topics such as credit utilization and how to build credit.

Learn More



**Privacy**

Detailed information on the Verve Credit Card privacy policy.

Learn More

### Who is The Bank of Missouri?

Founded in 1891, The Bank of Missouri (TBOM) is a trusted financial institution with $2.9 billion in assets. TBOM provides personalized banking solutions and empowers individuals to achieve their financial goals so they can Live Well, Bank Well. TBOM remains an independent community bank; small enough to offer personalized service, yet large enough to meet nearly any financial need.

### Who is Continental Finance?

Continental Finance Company ("Continental Finance") is one of America's leading marketers and servicers of credit cards issued by partner banks for consumers with less-than-perfect credit. Since the company's founding in 2005, Continental Finance has prided itself on fostering financial inclusion with innovative and flexible technology to deliver best-in-class customer support for those consumers who are excluded by traditional credit card programs.

### How do I apply for a Verve Mastercard?

Applying for a Verve Mastercard has never been easier. You may apply for a Verve credit card online from this website. To get a Verve credit card we're going to ask you for your full name as it would appear on government documents, social security number, date of birth and physical address. A P.O. box will not be accepted. This is common for anyone when you apply for a major credit card. We need this personal information for two reasons. First, Federal Law requires us to obtain, verify and record information that identifies each person who opens a Verve card account

3/6

# PLAINTIFF'S EXHIBIT B
## Verve® Trademark

Trademark Status & Document Retrieval

For assistance with TSDR, email teas@uspto.gov and include your serial number, the document you are looking for, and a screenshot of any error messages you have received.

STATUS    DOCUMENTS    MAINTENANCE                                    Back to Search        Print

Generated on: This page was generated by TSDR on 2024-08-13 13:18:40 EDT

Mark: VERVE

# VERVE

| | |
|---|---|
| **US Serial Number:** 86209737 | **Application Filing Date:** Mar. 03, 2014 |
| **US Registration Number:** 5279058 | **Registration Date:** Sep. 05, 2017 |
| **Filed as TEAS Plus:** Yes | **Currently TEAS Plus:** Yes |
| **Register:** Principal | |
| **Mark Type:** Service Mark | |
| **TM5 Common Status Descriptor:** | LIVE/REGISTRATION/Issued and Active |
| | The trademark application has been registered with the Office. |

**Status:** A Sections 8 and 15 combined declaration has been accepted and acknowledged.

**Status Date:** May 09, 2023

**Publication Date:** Jun. 20, 2017

Mark Information

Goods and Services

Basis Information (Case Level)

Current Owner(s) Information

**Owner Name:** Continental Finance Company, LLC

**Owner Address:** 4550 New Linden Road
Suite 400
Wilmington, DELAWARE UNITED STATES 19808

**Legal Entity Type:** LIMITED LIABILITY COMPANY    **State or Country Where Organized:** DELAWARE

Attorney/Correspondence Information

Prosecution History

TM Staff and Location Information

Assignment Abstract Of Title Information – Click to Load

Proceedings – Click to Load

https://tsdr.uspto.gov/#caseNumber=86209737&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch                1/2

# EXHIBIT C
## Ms. Owens' Experian Consumer Disclosure, August 12, 2024
## LVNV Tradeline - Excerpt

Prepared For

**LEANDO OWENS**

Personal & Confidential

Date Generated   Aug 12, 2024

Report Number   ████████



**Personal Information**

# EXHIBIT C
## Ms. Owens' Experian Consumer Disclosure, August 12, 2024
## LVNV Tradeline - Excerpt



**RESURGENT/LVNV FUNDING**
POTENTIALLY NEGATIVE

### Account Info

| | |
|---|---|
| Account Name | RESURGENT/LVNV FUNDING |
| Account Number | ▮▮▮▮▮▮▮▮ |
| Account Type | Debt Buyer |
| Responsibility | Individual |
| Date Opened | 04/30/2024 |
| Status | Collection account. $679 past due as of Jul 2024. |
| Status Updated | Apr 2024 |
| Balance | $679 |
| Balance Updated | 07/08/2024 |
| Recent Payment | . |
| Monthly Payment | . |
| Original Balance | $679 |
| Highest Balance | . |
| Terms | 1 Months |
| On Record Until | May 2030 |

### Payment History

| | J | F | M | A | M | J | J | A | S | O | N | D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2024 | — | — | — | — | — | — | C | — | — | — | — | — |

C   Collection

**Payment history guide**

Collection as of Jul 2024

This account is scheduled to continue on record until May 2030.

### Historical Info

Original Creditor    VERVE BANK OF MISSOURI

### Contact Info

Address    PO BOX 1269,
GREENVILLE SC 29602